CASE 97—PETITION ORDINARY—MAY 9.

# Hughes v. Cincinnati, &c., Railroad Company.

### APPEAL FROM PULASKI CIRCUIT COURT.

BURDEN ON PLAINTIFF TO SHOW NEGLIGENCE—PEREMPTORY INSTRUC-
TION.—In an action to recover damages for an injury arising from
defendant's neglect, the burden of showing neglect is upon the plaint-
iff; and if the evidence shows that the injury may have resulted
from any one of two causes, only one of which was due to defendant's
negligence, and the inference that the injury resulted from the one
cause is no stronger than that it resulted from the other, the plaintiff
has failed to make out his case, and it is not competent for the court
to leave the question to the jury.

After a freight train had passed through several tunnels in close
succession a brakeman was found on one of the box-cars in a dying
condition. There were loose timbers hanging from the roof of one
of the tunnels, and the theory of the plaintiff is that his intestate was
struck by these timbers, while the theory of the defendant is that the
injury was due to his failure to take the usual precaution to sit or lie
down by the brakes in passing through the tunnels, it being impossi-
ble to pass through one of the tunnels standing upright upon an ordi-
nary box-car. The evidence does not show the position of the loose
timbers in the tunnel in which plaintiff claims the accident occurred.
*Held*—That there is nothing to show that the injury occurred in the
tunnel in which the hanging timbers were, and even if there were,
there is nothing tending to show that it was caused by the hanging
timbers. Therefore, the court did right in giving a peremptory in-
struction to find for defendant.

CURD, DENTON & OWSLEY FOR APPELLANT.

Where the evidence tends, *in any degree*, to support a right of recovery, it
is error to give a peremptory instruction. (Shelby's Adm'r v. Rail-
road Company, 85 Ky., 225; Shackleford's Adm'r v. Railroad Co., 84
Ky., 44; Gregory v. Nesbit, 5 Dana, 421; Shay v. R. & L. T. Co., 1
Bush, 109; Easley v. Easley, 18 B. M., 93; Trotter v. Sanders, 7 J.
J. Mar., 321; Slaughter v. Morgan, 1 Met., 29; Stephen v. Brook, 2
Bush, 138; Eskridge's Ex'rs v. Cincinnati, &c., R. Co., 89 Ky.)

The evidence in this case not only shows a *prima facie* case for ap-
pellant, but excludes every other hypothesis than that of the death of
Wm. Hughes by the willful neglect of defendant.

C. B. SIMRALL, O. H. WADDLE FOR APPELLEE.

1. A railway company is not liable to freight brakemen, because the

bridges or tunnels over its line are not sufficiently high to permit the brakemen to stand safely on the roofs of cars moving under such bridges or through such tunnels. (Patterson on Railway Accident Law, page 302; P. & C. R. Co. v. Sentmayer, 92 Pa. St., 276; Owen v. N. Y. C. R. Co., 1 Lansing, 108; Devitt v. P. R. Co., 50 Mo., 302; B. & O. R. C., v. Stricker, 51 Md., 47; Raines v. St. L., J. M. & S. R'y, 71 Mo., 164; Baylor v. D., L. & N. R. Co., 40 N. J. Law, 23; Gibson v. Midland R'y Co., 2 Ontario, 653; Clark v. B. & D. R. Co., 78 Va., 709; Carbine's Adm'r v. B. & R. R. Co., 38 Am. & Eng. R'y Cases, 45; Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep., 153.)

2. Where an employe, with knowledge of a danger, voluntarily places himself in the way of it and is injured, he can not recover. (Derby's Adm'r v. Ky. Cent. R. Co., 9 Ky. Law Rep., 153; O'Bannon's Adm'r v. L. & N. R. Co., 9 Ky. Law Rep , 706; Jones' Adm'r v. L. & N. R. Co., 82 Ky., 610; Ky. Cent. R. Co. v. Sommers' Adm'r, 7 Ky. Law Rep., 818; L. & N. R. Co. v. Brice, 84 Ky., 303; Randall v. B. & O. R. Co., 109 U. S., 482.)

3. Where the evidence is as consistent with the non-existence of negligence as it is with its existence, the judge should not leave the matter to the jury. The party who affirms negligence has failed to establish it. (Philadelphia, &c., R. Co. v. Hummell, 44 Pa. St., 375; Priest v. Nichols, 116 Mass., 401; Cotton v. Wood, 8 Common Bench, 568; Thompson on Trials, sec. 1675; Dublin, &c., R. Co. v. Slattery, 3 Appeal Cases, 1155; Metropolitan R'y Co. v. Jackson, L. R., 3 Appeal Cases, 197; T. W. & W. R. Co. v. Brannagan, 75 Ind., 490; J. B. & W. R. Co. v. Greene, 106 Ind., 279; Warner v. N. Y. C. R. Co., 44 N. Y., 465; Condell v. N. Y. C. R. Co., 75 N. Y., 330; State v. Maine Central R. Co., 76 Me., 357; Lesan v. Maine Central R. Co., 77 Me., 85; State v. Maine Central R. Co., 1 New Eng. R., 286; Baulec v. New York & Harlem R. Co., 59 N. Y., 357; Forty-second Street and Grand Street Ferry R. Co. v. Hayes, 97 N. Y., 259; Philadelphia, &c., R. Co. v. Schertle, 2 Am. & Eng. R'y Cases, 158; Taylor v. Yonkers, 105 N. Y., 202; Corcoran, Adm'r, v. Boston & Albany R. Co., 133 Mass., 507; Riley, Adm'r, v. Connecticut River R. Co., 135 Mass., 292; Commonwealth v. Cozine, 10 Ky. Law Rep., 412; Sullivan's Adm'r v. Louisville Bridge Co., 9 Bush, 82; Rupard v. Chesapeake, &c., R. Co., 88 Ky., 280.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Mary A. Hughes, widow of William Hughes, sues for damages upon the ground that his death resulted from the willful neglect of the appellee. At the close of her testimony the lower court peremptorily directed

the jury to find for the company. If a *prima facie* case had been made out; if, indeed, there was evidence tending in any degree to show a right of recovery, this was error. This rule is too well settled in this State to need the citation of authority. The only question, therefore, before us is, whether, guided by this rule, the instruction was proper.

The deceased was a brakeman upon appellee's road. He had been so acting for nearly a year. During that time he had passed over the portion of the road where he was killed once, and sometimes twice, a day. He was entirely familiar with all the dangers usually incident to the service upon it. The train, a freight, consisting of quite a number of cars, and manned by a crew of three or four brakemen, an engineer and a conductor, was going north. It stopped upon the summit of a hill to get coal. The descent from there was several miles long, and a steep grade. In descending, the train had to pass through four tunnels, known as Nos. 9, 8, 7 and 6. They were reached by the train in the order named. When it stopped to coal the deceased was at the engine, and before it started he passed back over the train to the caboose, and when last seen alive he was at the rear of the train setting a brake. This was just before the train reached the first or No. 9 tunnel. The next seen of him was after they had passed through all four of the tunnels. He was then found in the agony of death upon the top and right at the north end of the fifth car from the caboose. It was a box-car not belonging to the appellee's road, and higher than the ordinary car of that character. He was lying upon his

back, his feet at or over the edge of the car, and the back of his head crushed in by coming in contact with some object. Tunnel 9 is about a half mile from No. 8, it about a sixth of a mile from No. 7, and it about a half mile from No. 6. While the train was running from where he was last seen until he was struck he passed over five cars, but exactly when he did so is not shown. There was no eye-witness to the injury. The petition avers that the accident occurred in tunnel No. 7, and was occasioned by the willful neglect of the company in suffering timbers therein to be out of place. *Contra*, it is claimed by the appellee that it occurred in tunnel No. 6. It is shown that one can not pass through the latter standing upright upon an ordinary box-car, nor through No. 7 upon such a car as that upon which the deceased was found, and that it was usual in passing through these tunnels for the brakemen upon box-cars to sit or lie down by the brakes, as they were compelled to be upon the tops of the cars to regulate the speed of the train, it being a down grade.

The *only* testimony as to any loose timbers in tunnel No. 7 is, that one of the hands upon the train says, as they passed through it, he saw the tunnel gang were at work there; he noticed some old timbers on one side of the track, and a new timber that was being put in its place was hanging up by the ropes. The evidence does not fix the position of this timber. It is not shown whether it was upon the side or next to the roof of the tunnel. There is no testimony whatever tending to show that it was in a position to strike a brakeman upon the top of a train

when in his usual position in passing through the tunnel, and had it been so, it seems to us it could easily have been shown.

The appellant urges that because one or two fingers could have been placed in the wound, and it across the back of the head; because the deceased was not knocked from the top of the car, but was lying upon it upon his back, therefore, he must have been struck by the loose timber. We fail, however, to see why these conditions might not just as well exist in case the deceased, by standing up, came in contact with any part of either one of the tunnels, whether a part of the wood-work or stone formation. The fact also that the speed of the train increased between tunnels Nos. 7 and 6 adds nothing to appellant's claim as to the manner of the injury, because the momentum of the train would naturally become greater as it approached the foot of the hill. It is said it was occasioned by the deceased being no longer able to regulate his brake; but other causes might equally have produced the increased speed.

There is, in our opinion, first, no evidence tending to show that the injury was received in tunnel No. 7; and, second, if it was, then there is no evidence that it was caused by the hanging timber. If the deceased, knowing he could not pass through these tunnels standing upon the top of the car, neglected to take the usual precaution of sitting down, there can be no recovery. There is no evidence showing whether he was thus injured or whether it was caused by the alleged timber. We are left to theorize as to it. One suing to recover damages for injury arising

from another's neglect must offer some testimony conducing to show that it was so occasioned. Negligence can not be presumed in a case like this one. The presumption is the other way. It can not be found without evidence. The complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. Mere proof of the injury, with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and under such circumstances he has offered no evidence tending to show it. He has merely presented two or more states of case upon which one may theorize as to the cause of the accident. Here, first, the deceased may have been struck by the low roof of tunnel No. 7; or, second, by that of No. 6; or, third, by the hanging timber in No. 7; and only in the latter case could there be any liability upon the part of the company. One thing is certain, the wound being upon the back of the head, shows that the deceased had his head turned from the direction the train was going when he was injured.

It was said in Cotton v. Wood, 8 Com. Bench, N. S., 568 (cited in Thompson on Negligence, page 364): "I wish merely to add that there is another rule of the law of evidence, which is of the first importance, and is fully established in all the courts, viz: that

where the evidence is equally consistent with either view—with the existence or non-existence of negligence—it is not competent to the judge to leave the matter to the jury. The party who affirms negligence has altogether failed to establish it. That is a rule which ought never to be lost sight of."

Where it is necessary to show a certain state of facts, it is not sufficient to prove two or more different states of case, one of which may be sufficient, but either of which may equally, under the testimony, have existed.

In Hayes v. Ferry Railroad Company, 97 N. Y., 259, if the accident did not result from the complainant's own negligence, it was at least questionable, and it was said : "He (the complainant) must prove something which warrants that inference (negligence upon the part of the company) and not leave his case upon facts just as consistent with care and prudence as with the opposite."

The cases of Baulec v. New York, &c., R. Co., 59 N. Y., 357; Philadelphia, &c., R. Co. v. Schertle, 2 Amer. & Eng. Railroad Cases, 158, and others, announce the same rule, and, in our opinion, it is a safe and correct one.

Judgment affirmed.